**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MICHAEL W. HARRIS, #M02086,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 26-cv-00857-RJD** |
| | ) | |
| **SGT. CROW, C/O WRIGHT, CRISTEL CROW, KIMBERLY HVARRE, C/O COSTELLO, YASEF BEDI, MYLES TINSLEY, MISS STUTTZ,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Michael W. Harris, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pontiac Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He claims his mental health crisis was ignored and he suffered unconstitutional conditions of confinement, and seeks monetary damages. (Doc. 1).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A,[1] which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

[1] The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 4), and the limited consent to the exercise of Magistrate Judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the IDOC.

**The Complaint**

Plaintiff makes the following allegations in the Complaint (Doc. 1): On February 13, 2025, while incarcerated at Big Muddy River Correctional Center ("BMRCC"), Plaintiff was brought from his cell for his morning medicine. (Doc. 1, p. 7). Plaintiff told Defendant Sgt. Crow that he had experienced multiple anxiety attacks the previous night and was contemplating self-harm. Plaintiff requested to speak with a crisis member from mental health and showed Crow his scars from previous self-harm incidents. Crow responded that she did not have a lieutenant to report to and did not care, then ordered Plaintiff to return to his cell. (Doc. 1, p. 7). As Plaintiff returned to his cell, he informed Defendant C/O Wright that he was having thoughts of self-harm; Wright laughed and responded that Plaintiff was seeking attention. (Doc. 1, p. 7–8).

Once in his cell, Plaintiff used part of a cable splitter to slice his left forearm, causing copious bleeding. (Doc. 1, p. 8). Another prisoner saw that Plaintiff was bleeding and notified Wright, who examined Plaintiff, laughed, and remarked "Did the little sissy cut himself?" Another officer called a medical emergency, and Plaintiff was taken to health care. After being bandaged, Defendant Stuttz, a mental health professional with the crisis team, placed Plaintiff on suicide watch in a dirty cell "that had feces on the walls." Defendant C/O Costello came to Plaintiff's cell and ordered him to remove his bandage in spite of the unsanitary environment. Plaintiff "tried to notify" Defendant-Wardens Cristel Crow and Kimberly Hvarre about his situation, but was told by Costello and Defendant Yusef Bedi, another mental health professional, that the wardens "had better things to do than coddle a suicidal cocksucker." (Doc. 1, p. 8–9). Plaintiff also tried to notify Defendant Myles Tinsley, the prison's PREA officer, and was told "an officer can do what they want to a silly faggot like [Plaintiff]." (Doc. 1, p. 9).

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

Count 1: Eighth Amendment deliberate indifference to serious mental health needs claim against Sgt. Crow and Wright for failing to summon mental health assistance for Plaintiff on February 13, 2026 when Plaintiff warned that he would engage in self-harm.

Count 2: Eighth Amendment claim against Stuttz, Costello, Cristel Crow, Hvarre, Bedi, and Tinsley for subjecting Plaintiff to unconstitutional conditions of confinement by exposing him to human waste in his cell during his period on suicide watch.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[2]

## Discussion

### Count 1

Prison officials' deliberate indifference to a prisoner's serious medical or mental health needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical/mental health condition, and (2) the defendant acted with deliberate indifference to his medical/mental health needs. *Id.* Acts of self-harm are objectively serious and may provide the foundation for deliberate indifference to medical needs claims. *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 665 (7th Cir. 2012) ("[P]rison officials have an obligation to intervene when they know a prisoner suffers from self-destructive tendencies."). As such, "prison officials must take reasonable preventative steps when they are aware that there is a

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

substantial risk that an inmate may attempt to take his own life." *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000); *see also Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775–76 (7th Cir. 2014) (quoting *Collins*, 462 F.3d at 761).

The allegations in the Complaint are sufficient for Plaintiff to proceed on the deliberate indifference claim in Count 1 against Defendants Sgt. Crow and Wright.

**Count 2**

Prison conditions that deprive inmates of basic human needs—food, medical care, sanitation, or physical safety—may violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346–47 (1981). To state an Eighth Amendment claim for unconstitutional conditions of confinement, a plaintiff must plead facts suggesting he was denied "the minimal civilized measure of life's necessities," amounting to a serious deprivation of basic human needs that created an excessive risk to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Rhodes*, 452 U.S. at 347. A prisoner must also sufficiently allege that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842. "[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). Exposure to human waste may support an Eighth Amendment claim. *See Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (internal citations omitted) ("An objectively 'sufficiently serious' risk . . . is one that society considers so grave that to expose *any* unwilling individual to it would offend contemporary standards of decency [such as] the acute risks posed by exposure to raw sewage. . . .").

The allegations in the Complaint are sufficient for Plaintiff to proceed on the claim in Count 2 against Defendants Costello and Stuttz. For Costello, Plaintiff alleges clearly that Costello not

merely refused to listen to Plaintiff's complaints concerning feces in the cell, but also ordered Plaintiff to remove his bandage despite the risk of contamination. (Doc. 1, p. 8). This is more than sufficient to state a conditions-of-confinement claim. *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) ("[E]xposure to psychological harm or a heightened risk of future injury from living in an infested jail is itself actionable."). As for Stuttz, Plaintiff states that she examined Plaintiff and then "placed [him]" in the dirty cell. (Doc. 1, p. 8). While these allegations are not entirely clear as to Stuttz's knowledge of conditions in the cell, Plaintiff's wording—coupled with the Court's obligations to liberally construe his Complaint—is sufficient to state a claim at this early stage. *See Balle v. Kennedy*, 73 F.4th 545, 557 (7th Cir. 2023) ("A pro se plaintiff need plead only a plausible claim for relief—which is not an exacting standard." (internal quotation marks and citation omitted)).

The Complaint fails to state a claim, however, against Defendants Cristel Crow, Hvarre, or Tinsley. Although these Defendants were allegedly in positions of authority at BMRCC, § 1983 actions do not allow for blanket supervisory liability. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992) (holding that the doctrine of *respondeat superior* does not apply to § 1983 actions). Rather, a defendant must be shown to have been "personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Plaintiff states that he "tried to notify" Cristel Crow, Hvarre, and Tinsley of his plight, but does not allege that any of them had personal knowledge of or involvement with the poor conditions he endured. (Doc. 1, p. 8–9).

Similarly, Plaintiff alleges that Bedi dismissed his attempts to contact the Wardens, but does not clearly state what he told Bedi about the conditions of his cell in making those complaints, or the degree to which Bedi was aware of those conditions. *Id*. Furthermore, Plaintiff does not

allege that Bedi was responsible for Plaintiff's consignment to a filthy cell—this limited involvement is not enough to state a conditions-of-confinement claim. *See Gentry*, 65 F.3d at 561.

Accordingly, Defendants Bedi, Cristel Crow, Hvarre, and Tinsley will be dismissed from this action without prejudice and Count 2 will proceed only against Stutz and Costello.

**Disposition**

The Complaint states colorable claims in Count 1 against Defendants Sgt. Crow and Wright and in Count 2 against Defendants Stuttz and Costello. Defendants Bedi, Cristel Crow, Hvarre, and Tinsley are **DISMISSED** from the action without prejudice.

The Clerk shall prepare for Sgt. Crow, C/O Wright, C/O Costello, and Miss Stuttz: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the

Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED: September 14, 2026**

**REONA J. DALY**
**United States Magistrate Judge**

**<u>Notice to Plaintiff</u>**

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order

containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.